IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

RUSSELL FORD, AIS # 148620,    )
    )
    Plaintiff,    )
    )
v.    )    CIVIL ACTION NO. 03-B-0110-N
    )    WO
JAMES DELOACH, et al.,    )
    )
    Defendants.    )

## MEMORANDUM OPINION AND ORDER ON MOTION

### I.   PROCEDURAL BACKGROUND

Russell Ford ("Ford"), a male state inmate at the Draper Correctional Facility in Elmore, Alabama ("Draper"), seeks in this *pro se* action declaratory and injunctive relief from prison overcrowding, understaffing, and conditions of confinement alleged to violate constitutional rights asserted under the First, Sixth, Eighth, and Fourteenth amendments.[1] Though the complaint lacks any jurisdictional averments, these constitutional claims can be presented only through 42 U.S.C. § 1983.  Designated defendants are Warden James DeLoach, Commissioner Donal Campbell, and Governor Bob Riley, each sued in individual and official capacities ("Defendants").[2]

---

[1]By Order filed February 28, 2003 (Doc. 9), the  Court denied Ford's request, construed as a motion for class certification, to proceed on behalf of the "Inmate Population presently and all persons who will be incarcerated in the future at the Draper Correctional Facility." In recommending against class certification, the Magistrate Judge "conclude[d[ that the *pro se* prisoner plaintiff is not an adequate class representative able to fairly represent the class." (citations omitted; Doc.4, 2/11/2003).

[2]Paragraph 7 of the complaint describes "fictitious defendants A-Z [as] those officials and guards who participated in and/or are responsible for depriving and substantially burdening the rehabilitation of the inmate population and/or conspiring to do the same, on the basis of underpay and overworked." The Federal Rules of Civil Procedure do not provide for fictitious party practice
(continued...)

Defendants filed a "special report"[3] and supporting evidentiary materials,[4] addressing all of Ford's claims for relief,  and the Court informed Ford that this special report could be treated, at any time, as a motion for summary judgment[5]  In compliance with procedural instructions on the nature and effect of a summary judgment motion as well as the need for, and requirements of, a response, Ford  filed his "Opposition" to defendants' special report[6].

---

[2](...continued)
as it is incompatible with federal procedure.  *See* Rule 10(a) ("[i]n the complaint, the title of the action shall include the names of all the parties ..."); *New v. Sports and Recreation, Inc.*, 114 F.3d 1092, 1094 at n.1 (11th Cir. 1997) (fictitious party practice not permitted in federal court and plaintiff's failure to name parties required that court strike parties.)

[3]The Special Report filed by Defendants on May 2, 2003 (Doc.15) asserted various immunities as well as defenses under Rule 12(b)(6), Federal Rules of Civil Procedure, and *Mt. Healthy v. Doyle*, 429 U.S. 174 (1977); additionally, Defendants denied that the complaint stated any actionable statutory  or constitutional claims. In compliance with an Order entered May 13, 2003, Defendants filed on May 28, 2003, a supplemental report (Doc.17) to address "(i) the plaintiff's claim that there is a lack of adequate security at Draper Correctional Facility, (ii) his allegations regarding the living conditions at such facility, and (iii) those assertions with respect to infringements upon the plaintiff's right to practice his religion."

[4]Defendants DeLoach and Campbell submitted affidavits for the initial special report, to which Defendants also attached Ford's Inmate Summary (Ex.3) and Inmate/Tranfer/Leave Dates.(Ex.4). The Supplemental Special Report included the Affidavit of Chaplain Willie J. Whiting (Ex. 5) as well as DOC Monthly Reports(May,02-April,03) (Ex.6); Chart, Draper Assaults (May,02-April,03) (Ex.7); Incident Reports, Inmate Hampton, 1/22/03 (Ex.8); Adm.Reg. 302, Incident Reporting (Ex.9); and Adm.Reg. 313, Chaplain Services and Religious Activities (Ex.10).

[5]*See Order of June 2, 2003 (Court Doc. No. 18)* at 2, n.1 ("...at some time in the future the court may treat the defendants' reports and the plaintiff's response as a dispositive motion and response.  Thus, in preparing a response to the special reports filed by the defendants the plaintiff should refer to the requirements of Rule 56, Federal Rules of Civil Procedure.")

[6]Disregarding this court's denial of his motion for class certification, Ford attaches to his Opposition (Doc.19, 6/23/2003) affidavits from 16 inmates who attest to Ford's contentions regarding  "officers attacking inmates without cause" (Exs.B, C, D, E, H); "inmates at substantial risk of physical harm" due to "the prison's overcrowding, inadequate staffing, training, and supervision" (Exs. A,  E, N); defendants' deliberate indifference to "deplorable conditions of confinement" (Exs.G, M) as well as their deliberate indifference to serious medical needs(Exs.I, J, K, P); inadequacies in the law library (Ex.R); and burdens on inmates' exercise of religious practices (Ex. O)   Additional attachments are identified in the discussion of Ford's legal claims.

The Court now deems it appropriate to treat the defendants' report as a motion for summary judgment.  After due consideration of supporting and opposing submissions, within the context of the applicable law, the Court concludes, as herein explained, that summary judgment is due to be granted in favor of all defendants.[7]

## II.  FACTUAL BACKGROUND

Ford, an Alabama state prisoner serving a 25-year term since 1988,[8] has been confined at Draper since August 29, 2000, residing at various times in a single-cell dormitory, in disciplinary segregation, and in a two-man cell.[9]  He contends that Draper, as of the February 3, 2003 filing date for his complaint,  housed "more than 1233 inmates . . . twice the amount...it was designed for, " and employed a correctional staff substantially below the 184 correctional officers required in *Pugh v. Locke,* 406 F.Supp. 218 (M.D. Ala. 1976) for 632 inmates.  He alleges that "tension between inmates and staff" results from fatigued correctional officers who "are now working double shifts, or 16 hours a day." According to Ford, the Warden's report of projected  additions to the inmate population will not only exacerbate overcrowding but also cause "the hobby craft shops to be closed and converted into dormitories." [10]

---

[7]In accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P.73, the parties consented on September 12, 2003, to the Magistrate Judge's exercise of final jurisdiction. (Doc. 22)

[8]*Defs.' Ex*.3, Special Report (Doc.15)

[9]*Defs.' Ex*.4, Special Report (Doc.15)

[10]Complaint at 3, ¶¶ 9-11.

Draper's overcrowding,  understaffing, and living conditions for inmates allegedly violate the Eighth Amendment's prohibition against cruel and unusual punishment (first cause of action);  burden inmates' right to access to court (second cause of action); deprive male inmates of equal protection and due process (third and fourth causes of action);  and infringe on the inmates' free exercise of their religions (sixth cause of action) as well as procedural due process rights relating to the  transmission by inmates of religious literature (seventh cause of action). Ford seeks no monetary damages or relief personal to him; instead, he claims entitlement to the following-described injunctive relief for a comprehensive reform of the conditions of confinement for Draper inmates:

> (b)   Granting permanent injunctive relief, requiring Defendants to stop accepting inmates into Draper Correction Center, while unconstitutional conditions remain;
>
> (c)   Ordering Defendants to employ full-time licensed chief medical officer; stop allowing nurse practitioners examine patients, diagnose illnesses, refer patients to physicians, dispense medications, and treat less serious illnesses, even though they are not licensed to do this and are inadequately trained;
>
> (d)   Ordering Defendants to employ qualified staff sufficient to maintain institutional order, including custodial staff to adequately supervise and control increased numbers on of inmates;
>
> (e)   Ordering Defendants to increase bathroom facilities adequately for the sanitation needs of the inmates;
>
> (f)   Ordering Defendants to allocate time, space, and facilities in furtherance of inmates' religious observations equally;
>
> (g)   Ordering Defendants to adequately ventilated and properly screened windows;
> ***
> (i)   Ordering the Defendants to institute programs for inmates at Draper designed to build positive and constructive attitudes and others of rehabilitation. . [11]

---

[11] *Compl*. at 12-13 (Prayer for Relief)

### III.  STANDARD OF REVIEW

To survive the defendants' properly supported motion for summary judgment, the plaintiff is required to produce some evidence supporting his constitutional claim.  *See Celotex v. Catrett*, 477 U.S. 317, 322 (1986).  He must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324.  A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment.  *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984).  Consequently, when a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party.  *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Indus. Inc.*, 814 F.2d 607 (11th Cir. 1987).  Where all the materials before the court indicate that there is no genuine issue of material fact and that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper.  *Celotex*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact.  *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990).

### IV.  DISCUSSION

#### A.    *Dismissal of Defendants Riley and  Campbell*

5

Ford designates Governor Riley as a defendant individually and in his official capacity while Commissioner Campbell, also sued in his official capacity, is a designated defendant individually only with respect to the "denial of access to court" claim asserted as the second cause of action. [12]   After describing the official position held by each of the three defendants, Ford avers:

> Acting under the color of statutes, ordinances, regulations, and/or customs of the State of Alabama, Defendants have established and are maintaining a policy and custom of depriving Plaintiff and the Inmate Population, collectively, at the Draper Correctional Center of rights secured to them by the United States Constitution and federal law. Defendants have been personally involved by engaging in specific acts and/or approving of wrongful conduct that has deprived the Inmate Population of their federal rights. Defendants' knowledge or encouragement of and acquiescence in the wrongful conduct has deprived all inmates incarcerated in the Draper Correctional Center of their Constitutional and statutory rights.  Defendants have devised a plan or scheme to deprive the Inmate Population of their Constitutional and statutory rights. [13]

These bold declarations of specific involvement by defendants are not buttressed, however, by allegations of conduct attributable specifically to the Governor and the Corrections Commissioner. Careful review of the entire complaint confirms that neither Governor Riley nor Commissioner Campbell was or is  in any way involved with the actions and institutional grievances about which Ford complains. Nothing in the factual background or any of the causes of action  – including the second cause of action which is specified as the source of individual liability against Commissioner Campbell –  specifies a personal act or decision by either which forms the basis for any culpability claimed.  Commissioner Campbell denies that he knows or has had any contact with Ford and testifies that he

---

[12]Compl., ¶¶ 4-6.

[13]Compl. at 2, ¶ 8.

"do[es] not control the daily operation of Draper Correctional Facility or other various institutions of the Department, and had no involvement in the alleged incidents."[14]

It is clear that Defendants Riley and Campbell are designated defendants solely on account of their ultimate supervisory roles respectively as head of state government and head of the department which oversees state prisons. The law is well settled that supervisory officials cannot be held liable in an action brought pursuant to 42 U.S.C. § 1983 under the theory of respondeat superior or vicarious liability. *Belcher v. City of Foley*, 30 F.3d 1390, 1396 (11th Cir. 1994); *Hardin v. Hayes,* 957 F.2d 845, 849 (11th Cir.1992). *Brown v. Crawford*, 906 F.2d 667, 671 (11th Cir. 1990). To recover individually from those who act in supervisory capacities, the Plaintiff must show that they are liable either through their personal participation in the acts comprising the alleged constitutional violation or the existence of a causal connection linking their actions with the violation. *Hill,* 40 F.3d at 1192.  A "causal connection" can be shown when there is a history of widespread abuse that should put the supervisor on notice of the problem, and the supervisor nevertheless fails to take corrective measures. *Bozeman v. Orum,* 199 F.Supp.2d 1216, 1233 (M.D.Ala.2002), *citing Hartley v. Parnell,* 193 F.3d 1263, 1269 (11th Cir.1999). Such a connection could also be shown when an improper custom or policy established by the supervisor results in deliberate indifference to constitutional rights. *Id., citing Rivas v. Freeman,* 940 F.2d 1491, 1495 (11th Cir.1991).

As explained herein, Ford's allegations of constitutional violations cannot survive

---

[14]Affidavit of Donal Campbell, Ex.2, Defs.' Special Report.

summary judgment; consequently, even if he could cure his deficient showing to maintain this action against the Governor and Corrections Commissioner, the claims against them would warrant dismissal since they are grounded solely on vicarious liability.

### B.        Dismissal of Conspiracy causes of action

Ford seeks in his fourth cause of action to fashion a class conspiracy claim of gender-based discrimination against male inmates, and as a purported claim under 42 U.S.C. 1986 as a fifth cause of action, he declares summarily:

> Defendants, and each of them, having knowledge of the wrongs conspired to be done and about to be committed in violation of 42 U.S.C. 1985, and having power with reasonable diligence, to prevent or aid in preventing the commission of same, did neglect or refuse to do so. (*Compl.*, ¶ 40)

These conclusory allegations [15] fall woefully short of the requisite pleading for these

---

[15]For his 42 U.S.C. ¶ 1985 claim, Ford pleads:

> Each of the Defendants has coconspired between and among themselves and others for the purpose of depriving, or indirectly, the equal protection of the laws, of equal privileges and immunities under the laws, of the rights guaranteed by the Fourteenth Amendment.  Each individual Defendant has taken an act in furtherance of the conspiracy and Plaintiff and others have been injured in their persons or property, and have been deprived of having and exercising rights and privileges secured to citizens of the United States.

> Defendants reached an understanding, engaged in a sequence of events of course of conduct, and otherwise agreed and conspired together and with others to violate the rights of Plaintiffs on the basis of gender.  The essential object, primary effect, and predominant purpose of the conspiracy was to stigmatize and oppress male inmates at the Draper Correctional Center in Elmore County, Alabama.  Plaintiffs has been (sice) and continue to be the target of gender discrimination.

> These defendants did reach this understanding and agreement, and did engage in this course of conduct with the mutual purpose, objective, and knowledge that it would deprive Plaintiff of his rights, privileges, and immunities as guaranteed by the laws of the United States; . . .

(continued...)

8

claims and, accordingly, present nothing for review.   In "civil rights and conspiracy actions, courts have recognized that more than mere conclusory notice pleading is required." *Fullman v. Graddick*, 739 F.2d 553, 556-57 (11th Cir. 1984) :

> In conspiracy cases, a defendant must be informed of the nature of the conspiracy which is alleged.  It is not enough to simply aver in the complaint that a conspiracy existed. A complaint may justifiably be dismissed because of the conclusory, vague and general nature of the allegations of conspiracy.   *Id.* (citations omitted).

Absent even minimum factual support for the existence of a conspiracy under 42 U.S.C. 1985(3),  these purported claims are due to be dismissed.


### C.   *"Official Capacity" Claims against Warden DeLoach*

Because an action against a governmental official in his official capacity is, in effect, an action against the governmental entity.  Defendant DeLoach properly claims absolute immunity pursuant to Article I, §14, Alabama Constitution of 1901.  See *Haley v. Barbour County*, 885 So. 2d 783, 788 (Ala. 2004);  *Ex parte Cranman*, 792 So. 2d 392, 403 (Ala. 2000)(citing *Gill v. Sewell*, 356 So. 2d 1196 (Ala. 1978)) ("The law of this State is that there is immunity when the state officer or employee has not exceeded his or her authority, but has merely negligently performed a statutory duty while acting pursuant to statutory authority."); *Alabama State Docks v. Saxon,* 631 So.2d 943, 946 (Ala. 1994).  [16]

---

[15](...continued)
>        Compl., at 8-9, 36-38.

[16]        This case does not fall within any of the categories –  outlined in *Aland v. Graham*, 287 Ala. 226, 250 So. 2d 677 (1977) –  which are outside the  prohibition of §14:
>        (1)Actions brought to compel State officials to perform their legal duties.
>        (2)Actions brought to enjoin State officials from enforcing an unconstitutional law.

(continued...)

In the absence of any showing that the Warden exceeded his statutory authority, this authority compels summary judgment to Defendant DeLoach on all "official capacity" claims.

### D.    *"Individual Capacity" Claims against Warden DeLoach*

For any negligence or tort liability alleged, Defendant DeLoach not only denies any cognizable claims but also claims the protection of qualified or discretionary function immunity, in reliance on *Taylor v. Showmaker*, 605 So. 2d. 828, 830 (Ala. 1992) ("The law of this state is that there is immunity when the state officer or employee has not exceeded his or her authority, but has merely negligently performed a statutory duty while acting pursuant to statutory authority.") Because the court concludes that summary judgment is appropriate in Defendant DeLoach's favor, no analysis of the qualified immunity defense is necessary.

### 1.   *Ford's Standing*

All of Ford's constitutional claims  suffer from the same deficiency which, alone, should be sufficient to doom this action: the absence of specific, concrete facts showing that the challenged conditions and practices have resulted or will result in a demonstrable, particularized injury to him.  His complaint fails to date, describe, or otherwise pinpoint any  act, omission, or breach of duty which has resulted in any specific injury, whether actual or threatened, to him.  Instead, in his thwarted effort to remedy asserted deprivations suffered by the entire class of inmates at Draper, he presents only conclusory and generalized grievances about

---

[16](...continued)
> (3) Actions to compel State officials to perform ministerial acts.
> (4) Actions brought under the Declaratory Judgment Act, seeking construction of a statute and how it should be applied in a given situation.

allegedly unconstitutional  policies, practices, and conditions of confinement; evidentiary support comes from other inmates relating either their personal grievances or their apprehension for personal security and health arising from their shared perception that Draper is overcrowded and under-staffing.

In sum, Ford's standing,  or "personal stake" in this controversy,  rests solely on the implication that his custodial confinement at Draper necessarily means that he falls within the class of inmates victimized and will necessarily benefit from the remedies requested..  The threshold showing for standing must demonstrate, as an "irreducible constitutional minimum,"  (1) that the plaintiff has suffered an injury in fact; (2) that the injury is fairly traceable to the actions of the defendant;  and (3) that the injury will likely be redressed by a favorable decision.   *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992);  *Miccosukee Tribe of Indians of Florida v. Florida State Athletic Commission*, 226 F. 3d 1226 (11th Cir. 2000); *Harris v. Evans*, 20 F.3d 1118, 1121 (11th Cir. 1994).  An "injury in fact" requires an invasion of a legally protected interest which is both concrete and particularized as well as actual or imminent, not conjectural or hypothetical. *See Miccosukee Tribe of Indians of Florida,* 226 F. 3d at 1229; *E.F.  Hutton & Co., Inc. v. Hadley*, 901 F. 2d 979, 984 (11th Cir. 1990).

Construing the allegations favorably to Ford, as is required in evaluating this adverse summary judgment motion, the court proceeds to discuss the substantive claims  but its analysis will be informed by due consideration of the plaintiff's burden to establish not only his standing to assert a particular claim but also his burden of proof in response to a properly supported motion for summary judgment.


## 2.  *Conditions of Confinement*

Ford's first cause of action, captioned "Cruel and Unusual Punishment", challenges (a) the adequacy of security  and (b) living conditions for Draper inmates.  Both challenges are premised on general allegations not referenced to any specific act, omission, or breach, resulting in any injury to Ford.  In response to Defendants' special report, Ford fails to present any evidentiary materials which raise a genuine disputed issue of fact with respect to his own actual or threatened injury from the inadequacies alleged in security and living conditions.  The affidavits offered from other inmates on the subjects of security and living conditions are not at all probative for any injury suffered by Ford.

(a) Security:  With respect to security for Draper inmates, Ford contends "that defendants have not supplied the additional staff of correctional officers to supervise the additional influx of inmates.  Officer to inmate assaults and inmate to inmate assaults go unreported and increasingly violent. " (¶ 15).  Defendants respond first with testimony from the Warden which acknowledges the need for additional staff, reports his efforts to remedy the problem, and denies Ford's undocumented report of violent consequences:

> The plaintiff's claim regarding the shortage of security staffing is true.  However, the Alabama Department of Corrections had made every effort to employ qualified correctional staff.  Our efforts have included running newspaper advertisements, radio advertisements, and sending recruiters to the state employment office.
> The plaintiff's claim that correctional officers are over worked and fatigued is untrue and without merit.  There is no apparent tension between inmates and staff.  The plaintiff's claim that assaults go unreported is untrue and without merit.  The plaintiff's allegations that incidents of violence at this facility are increasing is untrue, to the contrary there has been a decrease in acts of violence during the past thirty-six months. ***   There have been no homicides at this facility during my five year tenure as Warden. . . .  There is no merit to the plaintiff's claim that inmates walk the halls with swollen faces, black eyes and "knocked-our teeth.[17]

---

[17]*DeLoach Affidavit*, Ex. 1 to Defs.' Special Report (Doc.15).  The Warden also contradicts Ford's assertion of assaults by correctional officers on two inmates – Randall Hampton and Robert

(continued...)

The Warden's testimony is documented by official reports of the assaults occurring at Draper between May 2002 and April 2003 as well as comparative statistics for assaults at other prisons during the same period.[18]   Additionally, the Warden shows the existence of a comprehensive departmental policy and procedures for recording incidents which involve corrections employees and inmates.[19] Ford fails to oppose this evidence with any probative testimony or documentation which raises a disputed issue of fact regarding any deliberate indifference by the Warden to the safety and security of Draper inmates, any wrongful act or policy by the Warden which either exceeded his authority or resulted in actual or threatened injury to Ford, or any omission or breach by the Warden resulting in an actionable injury to Ford.   In short, Ford's claim that security is constitutionally inadequate is bootless.

>        *(b) Offensive living conditions*:        Equally meritless is Ford's litany of allegedly unconstitutional living conditions "such as.. . .inadequate toilets and shower fixtures; inadequate urinal fixtures, and no screening in the windows of the facilities, with inadequate ventilation; inadequate law library, and medical treatment, all due to a lack of funding for the Alabama Prison system."[20]   Ford again neglects to demonstrate any personal

---

[17](...continued)
Bryant.(see also "Incident Report, Inmate Hampton, 1/22/03",Ex.8, Supplemental Special Report)
To the extent that the submissions, including affidavits from e inmates – present a factual dispute,
it need not be resolved on this summary judgment submission as neither inmate is a plaintiff and
Ford has not been authorized to assert any claims for them.

[18]Ex.6, DOC Monthly Reports and Ex. 7, Chart, Draper Assaults; Supplemental Special
Report.

[19]Ex.9, Administrative Regulation NO. 302, April 6, 1999: Incident Reporting -Supplemental
Special Report)

[20]Compl.,¶ 16.

injury to him arising from these conditions of confinement; like the several inmates whose testimony he offers as support, he rests on the contention that the fact of these conditions is sufficiently indicative of cruel and unusual punishment prohibited by the Constitution. That proposition is simply unsupported by the applicable law.

A prison official may be held liable under the Eighth Amendment for acting with "deliberate indifference" to an inmate's health or safety when the official knows that the inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it. *Farmer v. Brennan*, 511 U.S. 825 (1994). Only those conditions which deny inmates "the minimal civilized measure of life's necessities" are grave enough to violate the Eighth Amendment. *Id.* at 347. Moreover, a constitutional violation occurs only when a plaintiff establishes the existence of "a substantial risk of serious harm, of which the official is subjectively aware, . . . and [that] the official does not respond[] reasonably to the risk'...." *Marsh v. Butler County*, 268 F.3d 1014, 1028 (11th Cir. 2001)(en banc), *quoting Farmer*, 511 U.S. at 844. Thus, in order to survive summary judgment on his claims challenging the conditions of confinement, the plaintiff is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendant['s] deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

The living conditions within in a prison will constitute cruel and unusual punishment when the conditions involve or result in "wanton and unnecessary infliction of pain, [or] . . . . [are] grossly disproportionate to the severity of the crime warranting imprisonment." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). "Conditions . . . alone or in combination,

may deprive inmates of the minimal civilized measure of life's necessities.  Such conditions

could be cruel and unusual under the contemporary standard of decency . . . . But conditions

that cannot be said to be cruel and unusual under contemporary standards are not

unconstitutional."  *Rhodes*, 452 U.S. at 347.   To determine whether conditions of

confinement constitute cruel and unusual punishment, the court must look to the effect the

condition has upon the inmate.  *See Rhodes*, 452 U.S. at 366.  In a case involving conditions

of confinement generally or several different conditions, the court should consider whether

the claims together amount to conditions which fall below constitutional standards. *Hamm*

*v. De Kalb County*, 774 F.2d 1567 (11th Cir. 1985), *cert. denied Hamm v. De Kalb County*,

475 U.S. 1096, 106 S.Ct. 1492, 89 L. Ed. 2d 894 (1986); *see also Chandler v. Baird*, 926

F.2d 1057 (11th Cir. 1991).

　　　In response to the alleged conditions of confinement summarized in Ford's

Complaints, the affidavit of defendant Warden provides this refutation:

> The plaintiff's claim that insects are widespread at this facility is without merit.  A
> contracted exterminator services this facility each month.  This plaintiff's claim
> regarding inadequate heat and ventilation are without merit.  The heating units were
> installed within the past twenty months.  There have been no inmate complaints
> regarding heat in their living areas.  During the summer months large industrial fans
> are used to circulate the air in inmate living areas. *** While Draper is the oldest
> facility in the Alabama prison system and is well over its designed capacity, this
> facility is clean, well maintained and orderly.  All inmates are treated in a humane
> manner.[21]

　　　Ford's opposition materials do not controvert the Warden's testimony with any

evidence that the conditions specified denied him the minimal civilized measure of life's

---

[21]DeLoach Affidavit at 2-3, Ex.1, Special Report.

necessities or subjected him to a wanton and unnecessary infliction of pain.  *Wilson v. Seiter*, 501 U.S. 294 (1991); *Rhodes v. Chapman*, 452 U.S. at 347.  Furthermore, Ford has failed to demonstrate any deliberate indifference or reckless disregard by the Warden with respect to his health or safety.  *Farmer v. Brennan, supra.*  Instead, he proffers mere repetition of his conclusory allegations – still devoid of any suggestion of the requisite deprivation and/or proof of injury and/or deliberate indifference personal to him[22] – and similarly deficient and irrelevant testimony from other   inmates expressing their dissatisfaction with the living conditions.  Consequently, summary judgment is due to be granted against Ford on his "conditions of confinement" claim.

### 3.   *Access to Court*

These cursory averments by Ford of a "denial of access to court" cause of action merit similarly short shrift:

> Plaintiff says that Defendants stopped necessary orders of legal books, (i.e., Federal Supplement; Bureau of National Affairs; Moore's Federal Practice; Alabama Criminal Practice; Federal Habeas corpus, and Prisoner's Self-Help Litigation Manual), all of which were mandated as ordered by this court in *Nichols v. Smith*, CV-86-V-461-N, due to overcrowding and lack of funding to supply influx of inmates.

These undocumented allegations are not coupled with either a showing of any adverse impact on Ford or his specific standing to enforce through this lawsuit any relevant injunctive order

---

[22]Ford's complaints extend to his unrealistic expectation of inmate freedom; he complains, for example, about "being awaken at 6:00 a.m., by loud speaker and expected to be checked out of the cell block for work at or before 7:00 a.m., or face disciplinary actions, while defendants knows cell blocks ore [overcrowedd and undersupervised] and inmates have to line-up to use toilets, urinals lavatories, and showers in total mayhem..... *Pl.'s Opposition* at 3.

requiring the library at Draper to stock specific volumes.  Moreover,  the Warden's affidavit

challenges as follows the accuracy of Ford's averments:

> The plaintiff's claim that inmates are denied access to the courts is untrue and
> without merit.  The inmate law library at this facility is well maintained.  During
> fiscal year 2002 approximately $9,700.00 was spent to purchase and maintain law
> books, legal reference materials, etc. [23]

In opposition to the Warden's testimony, Ford narrows his complaint to a contention that the

Draper library does not maintain all volumes "up to date according to the publishers'

revisions", and he attaches as support the "law library inventory for DCC signed by library

supervisor for the month and year of May 30, 2003."  Yet missing, however, is any allegation

that Ford suffered injury or had his access to court burdened because a specific library

volume lacked an updated revision or because some volumes were no longer being

purchased.[24]

Prisoners are entitled to "a reasonably adequate opportunity" to present claims of

constitutional violations to the courts.  *Bounds v. Smith*, 430 U.S. 817, 825 (1977).  In *Lewis*

*v. Casey*, 518 U.S. 343, 349 (1996), the Supreme Court expounded on *Bounds* and required

that an inmate demonstrate the existence of an "actual injury" arising from his claimed denial

of access to courts.  As applied in this non-class action context, Ford must demonstrate that

the alleged shortcomings in the Draper prison library from out-of-date or missing volumes

---

[23]DeLoach Affidavit at 2, Ex. 1, Special Report.,

[24]It appears from the Inventory prepared May 30, 2003, that, *inter alia*,  the defendants last
purchased in 1999 the Federal Supplement volumes, and procedural rules for the state and federal
court; that a law dictionary is outdated by 15 years; that only two volumes of the Alabama Code
have been damaged beyond repair ; and that some treatises have been either not purchased or
updated.  How any of these or other deficiencies affected Ford's pursuit of any legal action is not
evident at all.

has hindered, or is presently hindering, his effort to pursue a nonfrivolous legal claim. See *Lewis*, 518 U.S. at 356. Ford has failed to come forward with any evidence that Defendant DeLoach's failure to maintain an updated law library has deprived ***him*** of the ***capability*** of pursing any legal claims in a federal civil action. In the absence of any indication of ultimate prejudice or disadvantage, the defendant is entitled to summary judgment on this claim. *See Chandler v. Baird*, 926 F.2d 1057 (11th Cir. 1991).

### 4.  Equal Protection claims

As his third cause of action, Ford seeks to assert a class claim "based upon the failure to provide [him] and other similarly situated male inmates with equal (or even adequate) treatment, as female inmates by Defendants in making said quarterly reviews, rather than annual or semiannual progress reviews, to find inmates eligible for early release, purchasing and/or ordering all law books on current law library inventory report list, and activate active rehabilitative programs, (i.e., Alabama Volunteers in Corrections), as proposed for females at Julia Tutwiler Prison in Wetumpka, Alabama."[25]

This is not a class action lawsuit for Draper's male inmates, and Ford states no facts sufficient for any individual cause of action which is even remotely akin to a cognizable

---

[25]*Compl.* at 7, ¶ 25. In this cause of action Ford also relates his judgment that "[i]n the summer of 2002 two inmates were murdered in Elmore County, Alabama prisons due to overcrowding and undersupervised influx of inmates."(¶¶ 26-27) Although Defendant DeLoach's affidavit refutes this specific allegation of murder as well as Ford's general allegations of unreported inmate assaults "due to unsupervision of influx of inmates", he has no standing to assert claims on belief of these inmates. Accordingly, the Court declines to address these claims except to note that they also are patently deficient to state any equal protection violation, even if Ford had authority to assert them.

claim of unconstitutional denial of equal protection.   In order to establish a claim cognizable under the Equal Protection Clause of the Fourteenth Amendment , a plaintiff must first allege that he is similarly situated with other persons who were treated differently based on gender or  some other constitutionally protected interest.  *Jones v. Ray*, 279 F.3d 944, 947 (11th Cir. 2001).   The plaintiff next must demonstrate the existence of discriminatory intent; arbitrary application of prison rules without discriminatory intent is insufficient to demonstrate a violation of the Equal Protection Clause.  *Jones v. White*, 992 F.2d 1548, 1573 (11th Cir. 1993).

Since this case is before the court on a properly supported motion for summary judgment from the defendants, the plaintiff bears the burden of producing some evidence to show that he was the victim of intentional discrimination based on his gender.  *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).   Summary judgment is appropriate for Defendant DeLoach.

### 5.   Free Exercise of Religion

Ford attempts unsuccessfully to assert a "free exercise clause" violation as a First Amendment claim (Sixth Cause of Action) and a Due Process violation (Seventh Cause of Action).[26]  Both causes of action allege exclusively class concerns for Draper inmates, but neither provides a factual context for the all-encompassing claims that "practices . . .

---

[26]As a claimed "depriv[ation] of liberty interests without due process of law, Ford asserts simply: "The methods by which Plaintiffs' religious literature has been censored violates the procedural due process rights of Plaintiffs and those who seek to send religious literature to Catholics; Muslims; Jehovah's Witness; Protestants, and Seventh-Day Adventists (e.g., publishers, spiritual advisors).  This alleged cause of action is wholly unsupported by any facts specific to Ford and otherwise states no cognizable claim for relief.,

substantially burden Plaintiffs' right to free exercise of their central and sincerely held religious belief" and discriminate against "non-Christian religions, including: Catholics; Muslims; Jehovah's Witness; Protestants, and Seventh-Day Adventists."[27]   Ford not only fails to identify his own religion but also neglects to provide any factual basis for a claim that Defendants have burdened unconstitutionally his First Amendment right to free exercise of religion.

To the extent that these allegations could be construed to state any First Amendment Claim at all, Defendants offer relevant testimony, as follows, from Draper's Chaplain, Willie J. Whiting:

> As chaplain one of my duties is to ensure that all religious beliefs and practices that are recognized by the state are adhered to.  Each religious faith is afforded time and space to worship and practice their respective beliefs.  When applicable each group has a religious volunteer or spiritual leader to minister to said faith, Catholics, Muslims, Protestants, Jehovah Witness, and Seventh Day Adventist.  Each religious group is allowed to have objects that pertain to its faith, such a cross, medallion, or crucifix, bibles, korans magazines, etc.[28]

Ford's oppositional materials fail to present any genuine issue of disputed material fact as it relates to any burden on the free exercise of his religious belief, assuming that he possesses one.  The claimed violations of "free exercise of religion" are simply frivolous and

---

[27]Ford claims, for example, that "christians are provided religious objects, permitted ample time to spend at their places of worship, allocated space and facilities in furtherance of their religious observations and often permitted to wear colored beads and pendants in violation of Administrative Regulation Nos. 313, and 5-98."  Additionally, Ford contends: "Plaintiffs is [sic] denied access to spiritual leaders and to guidance from such leaders, and cannot associate with outside religious leaders.  All Christians [sic] inmates are allowed to maintain possession of a copy of their Bible and other books, but Plaintiffs is not allowed to keep possession of their religious books." *Compl*. at 10, 45-46.

[28]Affidavit of Willie J. Whiting, Ex.1, Defs.' Supplemental Special Report.

dictate the entry of summary judgment against Ford. *See Employment Div. v. Smith,* 494 U.S. 872, 877 (1990); *Turner v. Safely,* 482 U.S. 78, 107 (1987).

## V.   CONCLUSION

Accordingly, consistent with the analysis set forth in this Memorandum Opinion, it is **ORDERED** that:

1.   all claims asserted against defendant Governor Bob Riley and Commissioner Donal Campbell, in individual and official capacities, are hereby DISMISSED with prejudice.

2.   defendants' motion for summary judgment is granted with respect to each claim asserted against the remaining defendant, Warden James DeLoach, in both his official and individual capacities, and Judgment shall be entered in favor of this defendant and against the plaintiff, on all claims, with costs taxed against the plaintiff, and dismissal of this case with prejudice.

A separate Final Judgment is entered herewith.

DONE this 25TH Day of May, 2005.

> /s/ Delores R. Boyd
> DELORES R. BOYD
> UNITED STATES MAGISTRATE JUDGE